973 P.2d 474 (1999)
94 Wash.App. 511
In re the WELFARE OF H.S., A Minor.
B.S. and L.S., Appellants,
v.
Department of Social and Health Services, Respondent.
No. 17264-3-III.
Court of Appeals of Washington, Division 3, Panel Nine.
March 9, 1999.
Reconsideration Denied April 7, 1999.
As Corrected April 15, 1999.
*478 Timothy K. Ford, Macdonald Hoague & Bayless, Seattle, WA, Tom P. May, May & Hayden, Spokane, WA, Katrin E. Frank, Macdonald Hoague & Bayless, Seattle, WA, Counsel for Appellants.
Sylvia L. Glover, Attorney General's Office, Wa State Off of Atty Gen, Spokane, WA, Susan D. Miller, Asst Attorney General, Spokane, WA, cor Respondent. Counsel for Respondent Intervenor(s)
Allen M. Gauper, Salina Sanger & Gauper, Spokane, WA, Counsel for Respondent Intervenor(s)
Frank R. Hoover, Law Offices of Frank R. Hoover PS, Spokane, WA, for Guardian(s) Ad Litem *475 *476
*477 SWEENEY, J.
The Washington juvenile dependency statutory scheme permits termination of parental rights for deficiencies that are manifestations of chronic mental illness. B.S. and L.S. appeal the termination of their parental rights; both suffer from chronic mental illness. Their child H.S., now six years old, was removed from their home under an agreed order of dependency at the age of three months. The State sought termination when she was still in foster care after three and a half years. The court was persuaded that B.S. and L.S. unquestionably love H.S. But despite their best and sincerest efforts to resolve their parental deficiencies, B.S. and L.S. remained incapable of meeting the child's needs. They were unlikely to benefit from further services. And the child's need for a stable and permanent home required an end to the dependency.
In challenging whether clear, cogent and convincing evidence supports the court's findings of fact, B.S. and L.S. contend that necessary services failed to accommodate their handicap and their parental rights were terminated solely because of their disability, in violation of state and federal handicap-discrimination statutes. They also direct several due process challenges to basing the termination on facts different than those in the original dependency. First, they contend that RCW 13.34.180(5)(b), which permits consideration of chronic, severe mental illness in termination proceedings, is unconstitutionally vague as applied. Second, they contend they were effectively deprived of notice of the State's allegations, and that the burden of proof was shifted by requiring them to prove that undefined "conditions" had improved. Finally, they contend that secondary interests of the child were erroneously given precedence over their primary constitutional parental rights.
Clear, cogent and convincing evidence supports the requisite statutory elements, so we affirm the decision of the court.

FACTS
H.S. was born on November 25, 1992. When she was three weeks old, her parents requested that she be placed in voluntary care, and in March 1993 she was placed in shelter care. She was made dependent in May 1993 as to B.S., and in June 1993 as to L.S. H.S. has not lived with her parents since that time. H.S. was placed in foster care with B.S.'s cousins, where she remains. They offer H.S. a permanent home.
B.S. and L.S. both suffer from chronic mental illness. Both were hospitalized with acute symptoms in October 1992, right before H.S.'s birth. L.S. is diagnosed as paranoid schizophrenic, and B.S. has been treated for severe depression. L.S. was hospitalized *479 again shortly after H.S. was born. Both parents are currently diagnosed with schizophrenia, although L.S. disputes her diagnosis. Both parents are presently stabilized on medication as to acute symptoms.
The dependency arose primarily from concerns about lack of parent-child bonding and the baby's failure to thrive. The dependency court found there was no parent capable of providing adequate care. The underlying findings were that L.S.'s rigid and obsessive thinking endangered the baby's health, her thinking was confused, and she could not respond to questions about the baby's daily care. She was uncooperative and resistant to support. The baby was below the fifth weight-for-length percentile. L.S. also experienced, but did not act on, strong sexual urges toward the infant. The records of the final dependency review and termination hearings contain exhaustive expert testimony that the problems giving rise to the dependency remain unresolved.
Ongoing problems include B.S.'s and L.S.'s inability to handle the stress of H.S.'s visits; rigid and concrete application of suggested parenting techniques resulting in inappropriate feeding, putting the child to bed too much and waking her up too soon; inability or unwillingness to respond to safety concerns; unwillingness or inability to accept suggested parenting skills; failure to pick up on the child's cues, or understand or address her needs; continued absence of bonding; and the father's tendency to remove himself, either physically or mentally. Throughout, B.S. and L.S. had regular supervised or monitored visitation. In May 1995, in an effort to reunite the family, visitation was up to 40 hours per week in B.S. and L.S.'s home. As on previous occasions, however, the length and frequency of the visits had to be reduced because of stress to both the parents and the child. At the recommendation of H.S.'s psychiatrist, the court limited visits to three hours a week at the visitation center.
B.S. and L.S. complied with services to the best of their ability, in spite of delaying or rejecting some services. They were referred to the Child Abuse Project (CAP), but were denied admission because the program was not deemed appropriate to their needs. B.S. and L.S. declined a second CAP referral.
The record includes extensive expert testimony that while the parents' capacity for improvement had reached a plateu, the child's condition was disintegrating. H.S.'s court-appointed guardian ad litem, after spending over 1,500 hours with the family, strongly urged termination for H.S.'s sake. Pamela Aden, engaged by B.S. and L.S. to facilitate reunification, also recommended termination. There was testimony throughout that the child's need for resolution, permanence and stability had become urgent. The recommendation was for permanent placement with the foster parents.
The court entered extensive written findings in the termination order of February 3, 1997. B.S. and L.S.'s petition for direct review to the Supreme Court was referred to this court.

DISCUSSION
The trial court has broad discretion to terminate parental rights if it finds that the elements of RCW 13.34.180(1) through (6) are established by clear, cogent, and convincing evidence and that termination is in the best interests of the child. Former RCW 13.34.190(1), (4); In re Welfare of A.J.R., 78 Wash.App. 222, 228, 896 P.2d 1298, review denied, 127 Wash.2d 1025, 904 P.2d 1157 (1995). There are no more specific criteria because the facts of each case are unique. In re Welfare of Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980).
Former RCW 13.34.180 provides in part:
(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and
(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and
(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and
(4) That the services ordered under RCW 13.34.130 have been offered or *480 provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and
(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. In determining whether the conditions will be remedied the court may consider ...
. . . .
(b) Psychological incapacity or mental deficiency of the parent that is so severe and chronic as to render the parent incapable of providing proper care for the child for extended periods of time, and documented unwillingness of the parent to receive and complete treatment or documentation that there is no treatment that can render the parent capable of providing proper care for the child in the near future; and
(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]
Clear, cogent and convincing evidence means that the ultimate fact in issue must be shown by substantial evidence to be "highly probable." Krause v. Catholic Community Servs., 47 Wash.App. 734, 746, 737 P.2d 280, review denied, 108 Wash.2d 1035 (1987). We determine sufficiency of the evidence based on the record as a whole. In re Dependency of C.R.B., 62 Wash.App. 608, 618, 814 P.2d 1197 (1991).
B.S. and L.S. do not dispute the first three elements the child was found dependent, the court entered a dispositional order, and the child has been removed for six months. The disputed elements are that all necessary and reasonably available services capable of correcting the parental deficiencies within the foreseeable future have been offered or provided (RCW 13.34.180(4)); that there is little likelihood that conditions will be remedied in the near future because of severe and chronic psychological incapacity, and that there is no treatment that can render the parents capable of providing proper care for the child in the near future (RCW 13.34.180(5) and (5)(b)); that continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home (RCW 13.34.180(6)); and that termination is in the best interests of the child (former RCW 13.34.190(4)).
Findings: B.S. and L.S. contend generally that the court did not base its findings of fact on clear, cogent and convincing evidence. They assign error to all the substantive findings. Although the court states in its conclusions of law that RCW 13.34.180(1) through (6) were established by clear, cogent and convincing evidence, the order does not use the language "clear, cogent and convincing" in its findings. B.S. and L.S. argue that the findings merely parrot the statute and are not specific enough to support the conclusions. They do not assign error to particular findings or set forth the portions of findings which they assign error to as required by RAP 10.3(g) and RAP 10.4(c).
Assignments of error as to findings of fact must comply with RAP 10.3(g) and 10.4(c). We need not review challenged findings without citation to the record showing why the findings are not supported by the record. In re Discipline of Haskell, 136 Wash.2d 300, 310-11, 962 P.2d 813 (1998). Given the extensive findings and the size of the record, it is impossible to review a blanket assignment of error to findings. Morris v. Woodside, 101 Wash.2d 812, 815, 682 P.2d 905 (1984). We therefore review only findings argued in the brief. Valley View Indus. Park v. City of Redmond, 107 Wash.2d 621, 630, 733 P.2d 182 (1987).
Services: RCW 13.34.180(4) requires that all reasonably available services ordered under RCW 13.34.130 (dependency review provisions) have been offered and provided. B.S. and L.S. contend this element was not established, because they were denied participation in CAP based solely on their mental illness, contrary to the Americans with Disabilities Act (ADA), 42 U.S.C. sec. 12132.[1]
*481 Pursuant to former RCW 13.34.130(5)(b)(vii), the court ordered that CAP be offered. This order was conditional on the CAP program at some point deeming these parents eligible. CAP is a service of Spokane Mental Health, an independent, outside agency with its own eligibility criteria, which exists solely for the purpose of providing services to the mentally ill. The Department complied with the order and referred B.S. and L.S. to CAP twice.
The ADA was not violated. The ADA requires public entities to make reasonable accommodation for disabled persons. A.J.R., 78 Wash.App. at 230, 896 P.2d 1298. The Act does not require public entities to provide the disabled with services not offered to others. 42 U.S.C. sec. 12132.
In addition to the denial by both B.S. and L.S. of the existence of any parenting problems, which is incompatible with successful treatment, CAP rejected B.S. and L.S. because of their long-term therapeutic needs and the length of time H.S. had already been out of the home. The admissions evaluator felt CAP would be able to recommend reunification only after longterm treatment. In the event H.S. were returned, reintegration would require individual therapy and ongoing monitoring. CAP could provide neither. Because of their mental illness, ongoing treatment with Adult Outpatient Services was perceived as more beneficial than the "insight oriented group psychotherapy" offered through CAP. B.S. and L.S. refused the second CAP referral.
B.S. and L.S. are contending that they should be immunized from termination because the unavailability of a single offered service makes it impossible to prove RCW 13.34.180(4). But this case has been saturated with services from the beginning,[2] establishing RCW 13.34.180(4) by clear, cogent and convincing evidence. It would defeat the purpose of the entire dependency and termination scheme if a single unsuccessful referral were sufficient to preclude a finding that all necessary and available services had been offered.
Little likelihood conditions will be remedied: If all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future are offered or provided and the parental deficiencies are not substantially improved within 12 months of the dependency order, a rebuttable presumption arises that there is little likelihood that conditions will be remedied so that the child can be returned to the parents. RCW 13.34.180.
B.S. and L.S. mistakenly believe the "conditions" of RCW 13.34.180(5) are limited to the facts of the original dependency, and if termination is not based on these precise facts, it must be reversed. They argue that the only grounds for H.S.'s dependency were the baby's failure to thrive, the mother's inappropriate sexual impulses, and the acute nature of the mother's mental illness at that time. Because RCW 13.34.040 limits the court's jurisdiction to these grounds, they contend that when the court found all of these conditions had been resolved, it lost jurisdiction. In re Welfare of Boatman, 73 Wash.2d 364, 367, 438 P.2d 600 (1968). A proceeding begun on one ground and continued on another, without any opportunity to define and contest the new allegations, constitutes a fundamental deprivation of due process. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); In re Detention *482 of Cross, 99 Wash.2d 373, 384-85, 662 P.2d 828 (1983).
In the termination proceedings, they contend the "conditions" shifted to the alleged incapacity of the parents to provide for H.S.'s emotional and developmental needs. A dependency petition based on these "conditions," they argue, would have failed. They urge that they were wrongfully deprived of rights to their child without a showing that they are currently sufficiently "unfit" to permit a declaration of dependency under RCW 13.34.130.
B.S. and L.S. misinterpret the dependency statute. It is not necessary to re-establish the original dependency at termination. In re Dependency of J.C., 130 Wash.2d 418, 428, 924 P.2d 21 (1996). The review process results in repeated, updated findings of the dependency. Former RCW 13.34.130(5); In re A.W., 53 Wash.App. 22, 28, 765 P.2d 307 (1988), review denied, 112 Wash.2d 1017 (1989). The language of the statute contemplates that circumstances will evolve between the dependency of an infant and termination involving a four-year-old child. For instance, RCW 13.34.145(1)(b) provides that "identified outcomes and goals of the permanency plan may change over time based upon the circumstances of the particular case." RCW 13.34.150 provides for changes to court orders "upon a showing of a change in circumstance[.]" Changed circumstances do not necessarily reflect resolution of the parental deficiencies giving rise to the dependency, even though the manifestations of the problems necessarily change over time.
For this reason, termination proceedings are not a relitigation of the dependency issues, and the accuracy of the facts underlying the original dependency adjudication is not deemed critical. Krause, 47 Wash.App. at 743, 737 P.2d 280. The issue at termination is current unfitness. In re Dependency of K.R., 128 Wash.2d 129, 142, 904 P.2d 1132 (1995). If the elements of RCW 13.34.180 are proved, current parental unfitness is implicitly established. J.C., 130 Wash.2d at 428, 924 P.2d 21; K.R., 128 Wash.2d at 142, 904 P.2d 1132.
Jurisdiction: Insofar as B.S. and L.S.'s argument amounts to a challenge of subject matter jurisdiction, their contention is without merit. The superior court has broad and comprehensive original jurisdiction unless jurisdiction is vested exclusively in some other court. Wash. Const. art. IV, sec. 6. Because of this broad constitutional grant of jurisdiction, exceptions are read narrowly. Orwick v. City of Seattle, 103 Wash.2d 249, 251, 692 P.2d 793 (1984). Unless the Legislature demonstrates an intent to limit jurisdiction, an act should be construed as imposing no limitation. Burnside v. Simpson Paper Co., 66 Wash.App. 510, 517, 832 P.2d 537 (1992), aff'd, 123 Wash.2d 93, 864 P.2d 937 (1994).
Under the statutory dependency scheme, once dependency is established, the court retains jurisdiction until the child has been returned to the parents for six months. RCW 13.34.145(7). The court had subject matter jurisdiction.
Due process: Based on their misplaced insistence on identity of dependency and termination facts, B.S. and L.S. challenge the constitutionality of the statute, raising several due process issues.
Vagueness: B.S. and L.S. first contend that RCW 13.34.180(5) is unconstitutionally vague as applied. They contend the court refused to define the crucial statutory terms "conditions" and "proper care." Therefore, it was never specified what precise "conditions" had to change and what B.S. and L.S. could do to provide "proper care" so as to avoid termination. Because the conditions that led to the original dependency no longer existed and no other conditions justifying the dependency were ever alleged or found, B.S. and L.S. argue, the terms are unconstitutionally vague.
We presume statutes are constitutional. K.R., 128 Wash.2d at 142, 904 P.2d 1132. The challenging party has the burden to prove otherwise beyond a reasonable doubt. In re Dependency of C.B., 79 Wash. App. 686, 689, 904 P.2d 1171 (1995), review denied, 128 Wash.2d 1023 (1996). Since First Amendment freedoms are not involved, we consider only whether the statute is constitutional *483 as applied. C.B., 79 Wash.App. at 689, 904 P.2d 1171. In reviewing a vagueness challenge to a provision of RCW 13.34, the statute is unconstitutional as applied only if the record shows the decision was arbitrary. In re Welfare of Aschauer, 93 Wash.2d 689, 697-98, 611 P.2d 1245(1980) (vagueness challenge to the terms "proper parental care" and "proper maintenance"). The provisions of the statute are taken as a whole. Id. at 697, 611 P.2d 1245.
The court's written findings include specific language describing the nature of the parents' impairments and the effect on their parenting capabilities. The oral ruling discusses the specific testimony on which the decision relies. The term "conditions" clearly refers to present and continuing objective deficits in B.S.'s and L.S.'s parenting skills. The termination was based on present inability to correct the parenting problems that were litigated throughout the dependency. See A.W., 53 Wash.App. at 29, 765 P.2d 307. As the court observed in denying B.S. and L.S.'s motion to dismiss, B.S. and L.S. were at all times informed of the nature of the issues and the Department's position thereon.
Notice: Due process requires notice that is "reasonably calculated, under all the circumstances," to apprise the parties of the pendency of the action and enable them to present a defense. Duskin v. Carlson, 136 Wash.2d 550, 557, 965 P.2d 611 (1998). B.S. and L.S. contend that they were denied due process because they did not have notice of the specific issues to be considered. In re Welfare of Martin, 3 Wash.App. 405, 410, 476 P.2d 134 (1970).
Notice must permit adequate preparation for the hearing. Cross, 99 Wash.2d at 384, 662 P.2d 828. The State complied with LJuCR 3.9 provisions governing notice for review hearings. B.S. and L.S. had the Individual Service Plans which provided notice of the agency's position and plans with regard to developing issues. B.S. and L.S. do not dispute that these were filed, served and received. The issues underlying the termination are the same issues that were repeatedly litigated throughout: inability to meet the child's emotional and developmental needs, inability to respond outside the concrete, lack of flexibility and inability to react to new scenarios, and poor judgment.
Even if defective notice does implicate due process, it is harmless beyond a reasonable doubt when the complaining party subsequently participates in dependency review hearings and the termination adjudication. A.W., 53 Wash.App. at 27, 765 P.2d 307.
Notice is a matter of personal jurisdiction, objection to which was waived when B.S. and L.S. repeatedly appeared and litigated these issues. A.W., 53 Wash.App. at 26-28, 765 P.2d 307. Collateral attacks based on notice are disfavored, and CR 12(h)(1) waiver provisions are applied a fortiori to dependency proceedings. A.W., 53 Wash.App. at 26, 765 P.2d 307. Moreover, failure to seek review of the resulting orders waives notice for all but the April 16, 1996 review proceedings.
In the hearing, B.S. and L.S. were apprised of and litigated the issues underlying the termination. The court was satisfied that B.S. and L.S. knew at every stage of the proceeding what the State's position was. Due process was satisfied by notice and an opportunity to be heard. In re Welfare of Key, 119 Wash.2d 600, 611, 836 P.2d 200 (1992), cert. denied, 507 U.S. 927, 113 S.Ct. 1302, 122 L.Ed.2d 691 (1993).
Burden of proof: B.S. and L.S. next contend that the court's reliance on a dependency whose basis no longer existed violated due process by reversing the constitutional burden of proof, shifting the burden of persuasion with respect to facts the State is required to prove. State v. Dault, 19 Wash. App. 709, 713-14, 578 P.2d 43 (1978).
Termination must be based on current unfitness, as established by RCW 13.34.180(1) through (6). K.R., 128 Wash.2d at 142, 904 P.2d 1132. The burden of proof is clear, cogent and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). B.S. and L.S. argue that after determining that the grounds for the dependency were resolved, the court improperly required them to prove the absence of *484 continuing grounds and impermissibly presumed they were unfit when they could not.
The record does not support this contention. The State presented extensive evidence of current deficiencies. The court expressly found that the State established RCW 13.34.180(1) through (6) by clear, cogent and convincing evidence. The court also expressly states the appropriate burdens of proof were applied. The findings recite in detail the affirmative evidence on which the court relied in establishing current unfitness.
RCW 26.44.015(3): B.S. and L.S. next contend the State failed to establish RCW 13.34.180(5)(b), the presence of severe and chronic psychological incapacity or mental deficiency rendering them incapable of providing proper care with foreseeably available remedial treatments. They assert that they were found neglectful solely because of their mental illness in violation of RCW 26.44.015(3), which provides that no parent may be deemed abusive or neglectful solely by reason of handicap.
RCW 26.44.015(3) does not preclude termination. Mental illness or no mental illness, parental rights can be terminated if the parents lack the capacity to adequately nurture and care for the child. Aschauer, 93 Wash.2d at 694, 611 P.2d 1245. B.S. and L.S. read RCW 26.44.015(3) as prohibiting consideration of any parental deficiency that might be a manifestation of mental illness. This is contrary to the intent of the statutory framework.
That RCW 26.44.015(3) does not supersede RCW 13.34.180(5)(b) to prevent termination of parental rights in the face of a parent's chronic, severe mental illness is evident from the fact that RCW 26.44.015(3) and RCW 13.34.180(5)(b) were enacted in the same legislation. Laws of 1993, ch. 412, sec. 11, enacted RCW 26.44.015(3). This same chapter at sec. 2 amended RCW 13.34, specifically adding RCW 13.34.180(5)(b) and expressly authorizing the courts to consider severe and chronic mental illness in termination proceedings. We construe original acts and amendments as one law passed at the same time. In re Dependency of Ramquist, 52 Wash.App. 854, 859, 765 P.2d 30 (1988), review denied, 112 Wash.2d 1006 (1989). The provisions of RCW 13.34.180(5)(b) were properly applied in these proceedings.
B.S. and L.S. argue that the court simply ignored RCW 26.44.015(3) and based both dependency and termination explicitly on their mental illness. This is simply not supported by the record. While the State is barred from arbitrarily removing children merely because the parents are mentally ill, the mentally ill are not immune from having their children removed if they are unfit. The court considers behavior manifesting mental illness within the totality of the circumstances. In re Welfare of Hauser, 15 Wash.App. 231, 235, 548 P.2d 333 (1976). A child should not be left in the custody of a parent whose mental illness renders the parent unable to understand or meet the needs of the child. In re Welfare of Frederiksen, 25 Wash.App. 726, 733, 610 P.2d 371 (1979), review denied, 94 Wash.2d 1002 (1980); Aschauer, 93 Wash.2d 689, 611 P.2d 1245. This is so even though the parent is stabilized on medication, if there is no foreseeable likelihood of further improvement. In re Moseley, 34 Wash.App. 179, 186, 660 P.2d 315, review denied, 99 Wash.2d 1018 (1983). The parents' lack of insight into their condition may be considered. Krause v. Catholic Community Servs., 47 Wash.App. 734, 747, 737 P.2d 280, review denied, 108 Wash.2d 1035 (1987).
There was conflicting testimony about the precise diagnosis, but it was not disputed that both parents were severely and chronically mentally ill. The court reminded the parties numerous times that not the label but the behavior was of concern.
The record is replete with testimony that B.S. and L.S. have not benefited from the available parenting services and are unlikely to improve in the foreseeable future. One recurring theme throughout the record is the mother's unwillingness to accept advice or suggestions. Even when willing, both parents are unable to adapt instructions given in a particular situation to analogous situations. They therefore remain inadequate to deal with everyday parenting challenges. They *485 exhibit an inflexibility that leaves them unable to deviate from a planned activity when changing circumstances made it inappropriate. This is a common manifestation of schizophrenia. In re Dependency of P.D., 58 Wash.App. 18, 23-24, 792 P.2d 159, review denied, 115 Wash.2d 1019, 802 P.2d 125 (1990). In P.D., as in this case, the parent was unable to understand or pick up on a child's cues as to basic needs, and unable to generalize from specific instructions. Although the specific instances were minor, they added up to an inability to understand and respond to the child's basic needs. Id.
It was B.S.'s and L.S.'s behavior and H.S.'s reaction to them that were the conditions the court identified as parental deficiencies. Suicidal tendencies in the mother, extreme passivity in the father, rigid thinking, inability to put the child's needs before their own, and inability to generalize information in both parents may be manifestations of mental illness. However, the cumulative testimony presented clear, cogent and convincing evidence of the inability of these parents to recognize and respond to their child's needs. These deficiencies are aggravated, not ameliorated, by medication. Even though the positive symptoms of hallucinations and delusions are controlled, their disease continues to have significant impact on these parents' daily functioning and capacity to tolerate stress.
The child: RCW 13.34.180(6) and former RCW 13.34.190(4) require that the record must support the conclusion that continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home and that termination is in the best interests of the child.
B.S. and L.S. contend that the court did not find by clear, cogent and convincing evidence that termination was in H.S.'s best interests. In support of this, they point to the court's expressed opinion that "some contact between the child and her biological parents may be in her best interests as she continues to grow older...."
The child's anticipated permanent placement is within B.S.'s extended family. The court did express the hope that there would be contact. Psychiatrist Michael Manz also expressed this hope. However, both expressed this sentiment in the context of unequivocally recognizing that termination of parental rights is in the best interests of this child.
B.S. and L.S. believe their most sacred rights have been subordinated to the State's shifting and amorphous view of the child's best interests, and that the length of H.S.'s dependency is the fault of the State. They argue that advocacy in the best interests of the child does not permit any interest of the child to outweigh all rights of the parents. They contend that termination is justified only when the child is treated with cruelty or exposed to immoral or debasing conditions. In re Welfare of Hudson, 13 Wash.2d 673, 693, 126 P.2d 765 (1942).
Parents do have a fundamental liberty and privacy interest in the care and custody of their children, and termination should be allowed only for the most powerful reasons. In re Welfare of Sego, 82 Wash.2d 736, 738, 513 P.2d 831 (1973); In re Welfare of A.J.R., 78 Wash.App. 222, 229, 896 P.2d 1298, review denied, 127 Wash.2d 1025, 904 P.2d 1157 (1995). But the court may not accommodate the parents' rights when to do so would ignore the basic needs of the child. In re Welfare of Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980). The child's right to basic nurturing includes "the right to a safe, stable, and permanent home and a speedy resolution of [dependency] proceeding[s]." RCW 13.34.020; In re Dependency of C.R.B., 62 Wash.App. 608, 615, 814 P.2d 1197 (1991). H.S. has been dependent and in foster care since she was three months old. She is now six years old. The alternative to termination is not to return H.S. permanently to B.S. and L.S., but to continue her dependency indefinitely. No child should languish for years in foster care. H.S. should be freed to move on with her life.
The termination orders are affirmed.
KURTZ, A.C.J., and KATO, J., concur.
NOTES
[1] 42 U.S.C. sec. 12132 provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."
[2] Before the dependency: Mental health services; First Stepps, Public Health Nurse; Spokane County Health Department social work services; Division of Children and Family Services (DCFS) social worker services; Paul Wert, Ph.D. (parents delayed); Vanessa Behan Crisis Nursery (parents refused); Spokane Child Abuse and Neglect Prevention Services (resisted); Parenting aide; Parenting classes; Edwina Skinner, in-home social worker; Bonnie Johnson, public health nurse. After dependency: Sex Offender Counseling; Carol Thomas, MA; Kathy Seeley of Spokane Consultants in Family Living; Parenting classes; Deborah Kelly, parenting/visitation training; Mildred Staley, guardian ad litem; James Mahoney, parent-child evaluation and visitation assessment/supervision; supervised visitation; Dr. Wert; Michael Manz, MD, psychiatrist; pharmaceutical, medical, transportation, financial services; Pam Aden (terminated by the parents when she concluded reunification was not feasible); Joe Reeves, DCFS (services refused); Cerena Lauren; Pat James, MA, Spokane Mental Health Adult Services. Most of these providers had experience in working with the mentally ill.