# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of )
S.K., )  No. 69362-0-I
D.O.B.: 11/10/2004, )
) DIVISION ONE
Minor Child. )
) UNPUBLISHED OPINION
STATE OF WASHINGTON, )
DEPARTMENT OF SOCIAL AND )
HEALTH SERVICES, )
)
Respondent, )
)
v. )
)
DOMINIQUE LECHELLE KIRVIN, )
) FILED: August 12, 2013
Appellant. )

GROSSE, J. — A court may terminate parental rights if it finds that the Department of Social and Health Services (Department) has established the six statutory elements enumerated in RCW 13.34.180 by clear, cogent, and convincing evidence and that a preponderance of the evidence demonstrates that termination is in the best interests of the child. Because substantial evidence supports the court's findings, and the mother was unfit to parent at the time of termination, we affirm the order terminating the mother's parental rights.

## FACTS

S.K. was born on November 10, 2004. In 2008, when S.K. was four years old, police responded to a telephone call from the mother in which she requested the police take S.K., stating: "I'm going to kill my child. Come and get him." The mother denies saying she would kill S.K. but did request police to take S.K. to child protective services

and take her to jail. The police took S.K. to the home of Elizabeth Rhone, the mother's cousin. At a hearing on January 12, 2009, the Department recommended continued out-of-home placement while the mother continued drug and alcohol treatment, parenting classes, anger management, mental health counseling, and psychological evaluation with a parenting component.

The mother has an extensive history of child neglect, substance abuse, and mental health issues. She did successfully complete inpatient treatment in March 2009 and maintained sobriety for one year. During this period, S.K. was returned to the mother's care for a trial period. The mother relapsed and S.K. was returned to another relative's care within three months.

On March 30, 2010, an agreed order of dependency was entered. The mother admitted to having mental health and drug problems that prevented her from caring for her S.K. The mother was provided with referrals for additional services for her chronic mental health and drug abuse problems but failed to take advantage of those services. She did not participate in re-evaluation for treatment until March 2011, when she tested positive for marijuana and PCP (phencyclidine) and was diagnosed as cannabis, cocaine, and PCP dependent, diagnoses she does not agree with. The mother testified that she would not be truthful in any mental health counseling because reports would be generated to the Department and the court. She was diagnosed with undifferentiated schizophrenia. Additionally, the mother failed to partake in drug and alcohol treatment[1] or fully engage in mental health treatment and medication. The mother's interaction with S.K. was not always successful; the mother sometimes viewed S.K. as someone

---

[1] Positive urinalysis testing.

who could meet her needs rather than the reverse. Additionally, the mother's visitations with S.K. were inconsistent.

In November 2011, the Department filed a petition for the termination of the mother's parental rights to S.K. After trial in August 2012, the trial court entered an order terminating the mother's parental rights to S.K. The mother appeals the termination of her parental rights.

"[A] parent has a constitutional due process right not to have his or her relationship with a natural child terminated in the absence of a trial court finding of fact that he or she is currently unfit to parent the child."[2] Under Washington's statutory scheme, the court considering a petition to terminate parental rights uses a two-step process.[3] The first step focuses on the adequacy of the parent.[4] The Department must prove the six statutory elements listed in RCW 13.34.180(a)-(f) by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
>
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
>
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
>
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

---

[2] In re Welfare of A.B., 168 Wn.2d 908, 920, 232 P.3d 1104 (2010).
[3] In re A.B., 168 Wn.2d at 911.
[4] In re A.B., 168 Wn.2d at 911.

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

Proof of these six elements is an implicit finding of unfitness, satisfying the due process requirement that a court find a parent unfit before terminating the parent-child relationship.[5] The second step focuses on the child's best interests and must be proved by a preponderance of the evidence.[6]

Our review of these findings is limited to determining whether they are supported by substantial evidence.[7] Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise.[8] The trial court has the opportunity to hear the testimony and observe the witnesses. Accordingly, the trial court's decision is entitled to deference, and we do not weigh the evidence or judge the credibility of the witnesses.[9] In addition, unchallenged findings are verities on appeal.[10]

The mother does not challenge that the State presented sufficient evidence to prove elements (a) through (e). The mother challenges the trial court's findings regarding element (f), as well as the trial court's finding that termination of her parental rights was in S.K.'s best interests. She argues that the Department failed to prove by clear, cogent, and convincing evidence that "continuation of the parent and child relationship clearly diminish[ed S.K.'s] prospects for early integration into a stable and

---

[5] In re Dependency of K.N.J., 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011).

[6] In re K.N.J., 171 Wn.2d at 577.

[7] In re Welfare of C.B., 134 Wn. App. 942, 952-53, 143 P.3d 846 (2006).

[8] In re C.B., 134 Wn. App. at 953.

[9] In re C.B., 134 Wn. App. at 953.

[10] In re Dependency of J.A.F., 168 Wn. App. 643, 667, 278 P.3d 673 (2012).

permanent home" as required by RCW 13.34.180(1)(f). She asserts that the trial court erred in its findings 2.11 and 2.12.8, which provide:

> 2.11   Continuation of the parent-child relationship between the above-named minor child and the mother clearly diminishes the child's prospects for early integration into a stable and permanent home.
> . . . .
>
> 2.12.8  [S.K.] has been in and out of home placement 38 months over the course of this dependency. He has waited long enough for permanence, and while his relative placement is stable, it does not represent legal permanence until parental rights are terminated and [S.K.] is adopted.

The mother does not dispute that the permanent plan is adoption, that the child is adoptable, and that such an adoption cannot occur so long as the parent-child relationship between her and S.K. remains intact.

This court has rejected arguments similar to those the mother asserts here. In In re Dependency of A.V.D., the court noted that a stable foster home should not deprive a child from the benefit of a legally, permanent, stable home.[11] However stable a foster home may appear to be, placement cannot be permanent until parental rights are terminated, freeing the child for adoption. A child has a right to a safe, stable, and permanent home.[12] Where a parent's rights conflict with a child's rights, the child's rights prevail. Given the mother's inability to adequately care for S.K. either now or in the near future, S.K.'s integration into a permanent home can only be achieved by termination of parental rights and adoption.[13]

---

[11] 62 Wn. App. 562, 569, 815 P.2d 277 (1991).
[12] RCW 13.34.020; In re Welfare of H.S., 94 Wn. App. 511, 530, 973 P.2d 474 (1999).
[13] In re A.V.D., 62 Wn. App. at 569-70.

The mother's reliance on In re Dependency of K.D.S.,[14] to support her position that since S.K. is in a stable environment, there is no need for adoption, is misplaced. K.D.S. does not hold that parental rights cannot be terminated if the child is in a stable environment. Rather, K.D.S. clarified that the State must prove each element of RCW 13.34.180(1) before a trial court may terminate parental rights.[15] In so holding, the K.D.S. court noted that facts supporting a conclusion under RCW 13.34.180(1)(e) may, but do not necessarily, support a conclusion under RCW 13.34.180(1)(f).[16] Here, there are sufficient facts to support element (f).

The mother's contention that S.K. would not suffer ill effects from continued contact with her is not borne out by the record. The mother does not challenge the finding that her illness will continue to progress and worsen over time or that even if it were to stabilize, there would continue to be a risk that she could "quickly decompensat[e]." Testimony indicated that the mother exposed S.K. to inappropriate people because of her health problems and impaired judgment. Further, a psychiatrist testified that the mother was unaware of how to treat S.K. in a developmentally appropriate manner and that her impulsivity and explosiveness were a risk to S.K.

In addition to proving the six statutory factors, the State also must prove that termination is in the best interests of the child.[17] The unchallenged findings of fact support the court's finding that it was in the child's best interests to terminate the parent-child relationship. The mother contends that the witnesses agreed that S.K. would benefit from a continued relationship with her. But as noted previously, the mother's

---

[14] 176 Wn.2d 644, 294 P.3d 695 (2013).
[15] In re K.D.S., 176 Wn.2d at 654-55.
[16] In re K.D.S., 176 Wn.2d at 655.
[17] Chapter 13.34 RCW.

6

interaction with S.K. has not always been smooth or without incident. Although the court acknowledged that continued contact might be beneficial, the psychiatrist's, social worker's, and court appointed special advocate's (CASA) testimony all agreed that it was better for S.K. to be legally free. Further, the mother was aware of the services offered yet failed to take advantage of them in order to keep her child. It was her failure to use those services that factored into the order of termination. The mother has had inconsistent contact with the child over the course of the dependency and has not maintained regular visitation and, when those visitations did occur, they were not always successful. The testimony by the CASA indicated that contact with the mother was initiated by the social worker, not sought by the child. S.K. had been a dependent child for over three years. Substantial evidence supports the trial court's decision that termination of parental rights is in the best interests of S.K. Accordingly, the order of the trial court is affirmed.

WE CONCUR: