# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of<br><br>J.B.,<br><br>A minor child. | No. 81023-5-I<br><br>ORDER CHANGING CASE TITLE, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |

The Supreme Court of Washington granted discretionary review of the opinion filed on November 11, 2020, and on October 6, 2021 remanded the case with instructions to change the case title consistent with In re the Welfare of K.D., 198 Wn.2d 67, 491 P.3d 154 (2021).  This court has considered the order and on its own motion a majority of the panel has determined that the names of the parents should be removed from the opinion, the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the opinion filed on November 11, 2020 is withdrawn; and it is further

ORDERED that the case title shall be changed consistent with K.D.; and it is further

ORDERED that the names of the parents be removed from the opinion; and it is further

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of | No. 81023-5-I |
| J.B., | DIVISION ONE |
| A minor child. | UNPUBLISHED OPINION |

CHUN, J. — J.B.'s mother appeals an order terminating her parental rights to J.B. [1] She challenges the court's findings that the Department of Children, Youth, and Families (Department) offered her all reasonable and necessary services and that termination is in J.B.'s best interests. Because substantial evidence supports these findings, we affirm.

FACTS

On January 12, 2018, the Department filed a dependency petition and the court authorized the Department to take J.B. into custody based on allegations of J.B.'s mother using drugs and allowing inappropriate people around the child. Except for a trial return home period from August 28 to October 2, 2018, J.B. never returned to his mother's care.

The court entered a contested order of dependency for J.B. on May 10, 2018. The court's dispositional order required J.B.'s mother to engage in a number of services to remedy her parental deficiencies. These included

_____

[1] J.B.'s father has relinquished his parental rights and is not a party to this appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

completion of a release of information for the social worker to contact a drug and alcohol provider, completing an updated drug and alcohol evaluation if deemed necessary by the social worker after speaking with her current providers, random urinalysis tests (UAs), a mental health evaluation, parenting coach for age appropriate parenting education, if available, and follow all recommendations of evaluators and service providers. The order provided J.B.'s mother a schedule for supervised visits, and among other things, required her to submit monthly documentation of participation in services to the Department and to maintain a safe, stable, and drug, alcohol, and violence free living environment suitable for the care of a child.

On August 29, 2018, the court found a reason for removal of J.B. from his mother no longer existed. Over the Department's objections, the court returned J.B. to her for a trial return home.

On September 11, 2018, after J.B.'s return home, the Department social worker, Calista Currie, referred J.B.'s mother to a parenting instruction program called Triple P. She did not begin Triple P at that time because J.B. was once again removed from her care about three weeks later.

On September 28, 2018, the Snohomish County Regional Drug Task Force served a search warrant and raided J.B.'s mother's residence. They breached her apartment door about 10 minutes after J.B. had gotten on a bus for school. J.B.'s mother was inside the apartment with her boyfriend. In their search, the task force discovered two firearms, a box of ammunition, about 48 grams of methamphetamine, 28 to 30 grams of heroin, 55 Xanax pills, other drug

paraphernalia, and about $4,000 in cash. One of the firearms was loaded and located in a holster on the floor of the closet for the bedroom where J.B. slept.

After learning about the raid, the boyfriend's presence, and J.B.'s mother testing positive for methamphetamine around that time, the Department removed J.B. from her care on October 2, 2018. Later the same month, the court ordered J.B. remain out of her care because of methamphetamine found in the home and an unsafe living environment. At a review hearing on November 27, 2018, the court ordered that J.B. remain in out-of-home care and determined that J.B.'s mother was partially compliant in completing ordered services. The court ordered that she complete the same services set forth in the dispositional order, modified the visitation schedule, and appointed a court appointed special advocate (CASA) for J.B.

On January 23, 2019, the Department referred J.B.'s mother to Triple P for a second time. Amanda Farmer, the Triple P service provider, met with her three to four times between early March 2019 and the end of April 2019. Farmer, however, "returned the referral" because J.B.'s mother was not routinely visiting J.B., had too many "no-shows," and failed to communicate with the provider. Farmer agreed to accept another referral so long as J.B.'s mother was able to maintain 30 days of consistent visits.

On August 7, 2019, Currie contacted J.B.'s mother, congratulated her on maintaining visitation and said, "I have resent tour [sic] Triple P referral," to which she inquired about alternative programs. About two weeks later, Currie and J.B.'s mother's counsel exchanged communications about the status of the Triple

P referral. As an alternative, J.B.'s mother's counsel said, "I talked with [her] about Love and Logic . . . she is worried about a delay in getting Triple P going and/or the relative placement disrupting visitation again and the parenting class stopping again. She was to get started in the parenting program and get it done." Ultimately, J.B.'s mother agreed to proceed with Triple P.

Farmer and J.B.'s mother met twice in September 2019 to complete the Triple P program. Farmer "dropped" the referral again because of J.B.'s mother's inconsistent visits with J.B. and her continued missed appointments. When Farmer advised J.B.'s mother that she was dropping the referral, J.B.'s mother attempted to bribe Farmer by offering "some hundreds" to keep the referral open. Farmer declined the offer and was unwilling to work with J.B.'s mother again.

J.B.'s mother struggled with her substance abuse issues and failed to make any progress in her parenting training programs throughout the dependency. This caused the Department to petition for termination. The three day termination trial occurred in November 2019. The court heard testimony from nine witnesses and considered 64 admitted exhibits. On December 6, 2019, the court announced its ruling terminating the parent-child relationship. On January 13, 2020, the court entered extensive written findings of fact including the following contested ones:

> 2.65   Services ordered under RCW 13.34.136 have been expressly and understandably offered or provided, and all necessary services reasonably available, capable of correcting the parents' parental deficiencies within the foreseeable future, have been expressly and understandably offered or provided to the parents.
>
> 2.66   The mother's parenting deficiencies include mental health

issues, substance abuse issues, and lack of parenting skills.

. . .

2.71   The mother has been provided either through her own arrangement or Departmental referral, with all necessary services reasonable available [sic], capable of correcting parental deficiencies within the foreseeable future. These include: substance abuse assessment and recommendations for treatment, random UAs, parenting coach/age appropriate parenting education by way of the Triple P program, and to follow all the recommendations of evaluators and service providers.

. . .

2.79   The Department did not provide that class because, at the time it was brought up, the mother was going to participate in Triple P and she agreed to that service.

2.80   No evidence was presented from which the court could find that the Love and Logic class would have been better or would have been more effective at addressing parental deficiencies than the Triple P program, which was offered three times.

2.81   It is largely due to the mother's actions that she did not engage in the Triple P program. Certainly the first time it did not happen, which would have been the ideal setting with the child in the mother's care.

. . .

2.97   The mother is currently unfit to parent.

. . .

2.99   The mother is not fit at this time to provide a safe, stable, permanent home for [J.B.].

2.100  It is in the best interest of the child that all of the parental rights of the mother be terminated under RCW 13.34.180 and .190.

2.101  Based on the record as a whole, considering the testimony regarding his prospects for integration into a stable and permanent home, [J.B.'s] need for stability and routine, as testified to by the parenting class provider, that was very important to him, the testimony about his ADHD, and the continuing instability occasioned by continuing the parent-child relationship with no prospect of return in the foreseeable future, it is in [J.B.'s] best interests that the mother's parental rights be terminated.

. . .

5

2.110 While there are some concerns regarding the child's previous placement and visit supervisors, they do not overcome the fact that the mother has not made progress.

. . .

2.112 While the mother is making some progress in treatment, it is not substantial progress given that she has had two years to deal with this. She seems to be in much the same place she was when the dependency started.

J.B.'s mother appeals.

STANDARD OF REVIEW

To terminate parental rights, the Department must first prove the six elements set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence.[2] If the Department meets this burden, the trial court must then find by a preponderance of the evidence that termination is in the child's best interests.[3]

If substantial evidence[4] supports the trial court's findings, we must affirm the termination order.[5] On review, we defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the weight or persuasiveness of the evidence.[6] We accept unchallenged findings of fact as true on appeal.[7] This deference is particularly important in proceedings affecting the parent and child relationship because of "the trial judge's advantage in having the witnesses before him or her."[8] Whether a termination order satisfies statutory

---

[2] RCW 13.34.190(1)(a)(i); In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

[3] RCW 13.34.190(1)(b); In re Welfare of A.B., 168 Wn. 2d 908, 911, 232 P.3d 1104 (2010).

[4] In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

[5] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

[6] State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

[7] In re Dependency of J.M.R., 160 Wn. App. 929, 939, 249 P.3d 193 (2011).

[8] In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

requirements is a question of law we review de novo.[9]

ANALYSIS

J.B.'s mother raises two issues for our review, one concerning the provision of necessary services and the other regarding the child's best interests.

Necessary Services

First, she argues the Department did not satisfy RCW 13.34.180(1)(d) because the Triple P program was inadequate and ultimately cancelled due to the interference and malfeasance of visitation supervisors. But, the record does not support this argument.

To terminate parental rights, the Department must prove it offered "all necessary services, reasonably available, capable of correcting the parental deficiencies with the foreseeable future."[10] A service is "necessary" if it is "needed to address a condition that precludes reunification of the parent and child.[11] When a parent has unique needs, the Department must offer services tailored to meet those unique needs.[12] But, a trial court may find the Department offered all reasonable services where "the record establishes that the offer of services would be futile."[13] The provision of services is futile where a parent is unwilling or unable to participate in a reasonably available service that has been offered or provided.[14]

---

[9] In re Dependency of K.N.J., 171 Wn.2d 568, 574, 257 P.3d 522 (2011).

[10] RCW 13.34.180(1)(d).

[11] In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014).

[12] In re Welfare of Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983).

[13] In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008).

[14] In re Matter of K.M.M., 186 Wn.2d 466, 483, 379 P.3d 75 (2016).

Here, the crux of J.B.'s mother's argument is that she could not complete Triple P solely due to the interference of J.B.'s placement provider and visit supervisors. She claims the Department was aware of these obstacles and failed to offer her an alternative parenting instruction program called "Love and Logic." But, she misconstrues the record.

First, J.B.'s mother received three referrals to Triple P and failed to complete the program at any time. As a consequence of the September 2018 drug raid of her apartment and removal of J.B. from her custody, J.B.'s mother was unable to engage in Triple P in the first referral. At her second chance to participate in the program in spring 2019, J.B.'s mother was not at home when the service provider appeared for scheduled appointments, and she did not notify the provider that she would not be home. J.B.'s mother also failed at her third opportunity for completing Triple P by failing to appear at scheduled appointments with the service provider, and again by failing to notify the provider in advance of her absence. J.B.'s mother's behavior prevented her from benefiting from this service.

Second, J.B.'s mother does not point to anything in the record that supports her claim that the Love and Logic parenting class would have corrected her parental deficiencies within J.B.'s foreseeable future or that the program was even available at the time. In sum, substantial evidence supports the court's finding that the Department satisfied RCW 13.34.180(1)(d) by referring J.B.'s mother to Triple P multiple times.

8

Best Interests of the Child

J.B.'s mother also argues substantial evidence does not support the court's finding that termination is in J.B.'s best interest. We disagree.

The "dominant consideration" when evaluating the best interests of the child is not an individual's motivation to parent but rather the "moral, intellectual, and material welfare of the child."[15] "The child's right to basic nurturing includes 'the right to a safe, stable, and permanent home and a speedy resolution of [dependency] proceeding[s]."[16] "When a parent has failed to rehabilitate over a lengthy dependency period, a court is fully justified in finding termination to be in a child's best interests rather than leaving the child 'in the limbo of foster care for an indefinite period' while the parent seeks further rehabilitation."[17]

Here, the Department offered substantial evidence at trial that termination is in J.B.'s best interests. J.B.'s mother does not challenge these findings of fact.

> 2.102 The foreseeable future for [J.B.] is not two or three years from now, and it is not even a year. It has already been two years.
>
> 2.103 There is nothing to suggest that the mother is better able to deal with the child's return home now than she was over a year ago, when that did not work, because the mother has not really owned why that did not work or her own contribution to it.
>
> . . .
>
> 2.106 Given what happened then and that the mother seems to be in the same position now, one cannot say that in the near future she is going to be ready for this child to be return[ed]

---

[15] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

[16] In re Welfare of H.S., 94 Wn. App. 511, 530, 973 P.2d 474 (1999) (quoting RCW 13.34.020) (citing In re Dependency of C.R.B., 62 Wn. App. 608, 615, 814 P.2d 1197 (1991)).

[17] In re Dependency of J.A.F., 168 Wn. App. 653, 670, 278 P.3d 673 (2012) (quoting T.R., 108 Wn. App. at 167).

home successfully.

2.107 It would be harmful for this child to go through another trial return home that is not successful.

. . .

2.113 There is a very strong bond between the mother and [J.B.]. There is no doubt that there is harm to the child if there is a termination of parental rights. This child is old enough that he knows who his mother is, and he wants to see her and have some relationship with her. It is also clear that [J.B.] does much better when he is in a safe and stable and permanent placement.

2.114 The Department has demonstrated that the mother is not making the kind of progress that is necessary for this child to be returned home in the foreseeable future.

2.115 Unless something changes radically, the mother is going to continue much on the same pattern of engaging and disengaging. The mother is capable and intelligent, and clearly can do this for a while, but she has not figured out how she can do it consistently.

On appeal, we accept these unchallenged findings as true. These findings establish termination is in J.B.'s best interest.

CONCLUSION

Because substantial evidence supports the trial court's termination findings, we affirm.

_Chun, J._

WE CONCUR:

_Appelwick, J._

10

ORDERED that a substitute unpublished opinion shall be filed.

_Chun, J._

_Appelwick, J._