[Nos. 13670-1-III;   Division Three.   November 7, 1995.]
    13671-0-III;
    13672-8-III.

*In the Matter of the Dependency of* C.B., ET AL.

DANIEL B., *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*William O. McCarthy*, for appellant.

*Christine O. Gregoire, Attorney General*, and *David W. Coe* and *Jill B. Keller, Assistants*, for respondent.

SCHULTHEIS, J. — Daniel B.'s parental rights to his three children, C.B., B.B. and A.B., were terminated. Mr. B. contends: (1) RCW 13.34.190(2) is unconstitutional in that it allows the trial court to waive proof of compliance with requirements set out in RCW 13.34.130, 13.34.180 and 13.34.190(1) which are themselves constitutionally required; and (2) the finding that his parental deficiencies were not likely to be remedied in the foreseeable future is not supported by substantial evidence. We affirm.

Mr. B. was convicted of first-degree manslaughter after strangling his wife during a domestic violence incident in 1989 and he was sentenced to fifty-four months. He was released from prison in May 1992. In the interim C.B., B.B. and A.B. were placed with their maternal relatives. C.B. was then three and one-half, B.B. was nineteen months and A.B. was five months. A.B. was placed with her great aunt, Janice Cox, who provided her with a nurturing environment. A.B. now believes Ms. Cox is her biological mother. The boys lived with a series of individuals. B.B. resided in eight different households over the span of two years.

The Department of Social and Health Services (DSHS) became involved in 1991 when B.B.'s foster parents advised they could no longer care for him. Dependency

proceedings were initiated and the agency followed up by investigating the status of A.B. and C.B. A.B. was in good hands, but C.B., intentionally or otherwise, burned down his foster parents' home. Both C.B. and B.B. exhibited significant behavioral disorders. Their caseworker was concerned about finding a special placement to accommodate their behavior. A disposition order as to B.B. was entered on May 30, 1991. Disposition orders as to the other children were entered on July 29. Termination petitions were filed on February 19, 1993. A hearing followed on August 31 and September 1 and 2, and termination orders were entered on November 1, 1993.

Mr. B. contends RCW 13.34.190(2) functions as an expedited termination statute which violates his right to due process. The rules of statutory constructions guide our analysis.

■■ First, a statute is presumed to be constitutional. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992); *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991). The challenging party has the burden to establish the statute's unconstitutionality beyond a reasonable doubt. *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96, *review denied*, 125 Wn.2d 1009 (1994).

Second, unless First Amendment freedoms are involved, generally we will only consider whether a statute is constitutional as applied to the facts of the case. *State v. Carver*, 113 Wn.2d 591, 599, 781 P.2d 1308, 789 P.2d 306 (1989); *Seattle v. Yeager*, 67 Wn. App. 41, 44, 834 P.2d 73 (1992) (noting the limited area of electronic eavesdropping is the only other judicially recognized area for a facial constitutional attack), *review denied*, 121 Wn.2d 1027 (1993).

Procedural due process requires notice and an opportunity for a hearing before governmental deprivation of a property interest. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). Mr. B. does not argue he received inadequate notice of the termination proceedings or an inappropriate hearing; indeed, he was

notified the State was seeking termination fifteen months prior to trial. Instead, he argues his substantive due process rights were violated by an accelerated termination proceeding which effectively ensured termination without requiring the State to provide services for correcting parental deficiencies. RCW 13.34.180(4); RCW 13.34.190(2).

■ Both the Washington and United States Constitutions guarantee that a person may not be deprived of life, liberty or property without due process of law. U.S. Const. amends. V, XIV; Const. art. I, § 3; *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A statute impinging on a fundamental right is constitutional only if it furthers a compelling state interest and is narrowly drawn to meet that interest. *In re Schuoler*, 106 Wn.2d 500, 508, 723 P.2d 1103 (1986).

■ ■ Washington law recognizes that parents have a fundamental liberty and privacy interest in the care, custody and management of their children. *In re J.H.*, 117 Wn.2d 460, 473, 815 P.2d 1380 (1991). This fundamental parental right must be balanced with the State's compelling interest in providing maximum protection for dependent children. *In re S.E.*, 63 Wn. App. 244, 250, 820 P.2d 47 (1991), *review denied*, 118 Wn.2d 1017 (1992). When the rights of parents and the welfare of their children conflict, the welfare of the minor children is paramount. *In re Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984). The child is entitled to "a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter." RCW 13.34.020; *In re C.R.B.*, 62 Wn. App. 608, 615, 814 P.2d 1197 (1991).

In the normal course of parental rights terminations, the State must allege and prove six elements: (1) dependency; (2) entry of a dispositional order; (3) the child has been out of the family home for at least six months; (4) all necessary remedial services have been provided or offered; (5) there is little likelihood that conditions will be remedied in the near future; and (6) continuation of the parent-child relationship diminishes the child's chances

for integration into a stable and permanent home. RCW 13.34.180. Proof must be by clear, cogent and convincing evidence, RCW 13.34.190(1); however, subsections (3) and (4) may be waived if subsections (1), (2), (5) and (6) are established beyond a reasonable doubt. RCW 13.34.190(2).

In weighing whether elements (5) and (6) are proven, the court must consider whether aggravating circumstances exist as defined in RCW 13.34.130(2). RCW 13.34.190(3). Aggravating circumstances include conviction of child rape, criminal mistreatment of a child, certain child assault offenses, murder or manslaughter of a child or the parent's spouse, or a finding that the parent is a sexually violent predator. RCW 13.34.130(2). The State here chose to employ the RCW 13.34.190(2) and (3) procedure because Mr. B.'s murder of the children's mother is one of the aggravating circumstances the expedited process was designed to address.

We disagree with Mr. B.'s assessment that application of RCW 13.34.190(2) and (3) automatically resulted in termination of his parental rights. It was not the fact of the aggravating circumstance which compelled termination; rather, the aggravating circumstance triggered application of a more stringent standard of proof to the key determinations made by the court: whether the parental deficiencies could be remedied in "the near future" and the child could be integrated into a stable, permanent home.

It must be noted that Mr. B. does not assign error to the trial court's finding that *all parties* waived proof of RCW 13.34.180(3) and (4), the two provisions excluded in an expedited termination proceeding. Further, he does not assign error to the court's finding, supported by the record, that he feels "he has completed all necessary services to make him an adequate parent." Unchallenged findings of fact are treated as verities on appeal. *State v. Gentry*, 125 Wn.2d 570, 605, 888 P.2d 1105, *cert. denied*, 116 S. Ct. 131 (1995). Accordingly, we find that Mr. B. stipulated to the expedited termination process of RCW 13.34.190(2)

and (3) and that the process, at any rate, did not prevent him from receiving "necessary services." RCW 13.34.180(4).

■ Mr. B. does assign error to three findings by the trial court that he contends are not supported by the record. These findings may be summarized as follows: (1) Mr. B.'s poor insight into his conduct and its impact on the children cannot be remedied in the near future; (2) he persistently blames others for his problems; and (3) his testimony shows he has gained no insight into his parental deficiencies and denies responsibility for any of his actions. The first of these findings is a conclusion of law and we treat it accordingly. *State v. Hutsell*, 120 Wn.2d 913, 918-19, 845 P.2d 1325 (1993).

■ ■ The trial court's findings of fact will not be disturbed on appeal if supported by substantial evidence. *In re P.D.*, 58 Wn. App. 18, 25, 792 P.2d 159, *review denied*, 115 Wn.2d 1019 (1990). Review is limited to ascertaining whether the findings are supported by substantial evidence, and if so, whether they support the conclusions of law. *Id.* at 25. This determination must be made in light of the degree of proof required. *Id.* at 25. RCW 13.34.190(2) requires the trial court to find beyond a reasonable doubt (1) that there is little likelihood parental deficiencies will be remedied in the near future, and (2) that continuation of the parent-child relationship clearly would interfere with placement in a stable, permanent home. RCW 13.34.180(5), (6). We find the record substantially supports the findings and conclusions of the trial court.

First, Mr. B.'s consistent refusal to acknowledge responsibility for his actions shows a lack of insight into the consequences of his violent conduct. As the court noted:

> Mr. [B.] has persistently, without exception, blamed others for his legal problems: he blames another employee and his supervisor for creating the frustration and anger which resulted in his 1987 assault with an automobile; he claims that his wife's attack with a knife caused him to defend himself; that the fatal damage to her neck was caused by

paramedics trying to resuscitate her; and that the children's behavioral disorders result from mistreatment in the homes of relatives and foster parents.

Second, his criminal history is compelling evidence of a long-standing violent response to certain situations. In the four years preceding his wife's death, Mr. B. had contact with the authorities on numerous occasions for acts involving violence and aggression. These included investigations for second-degree assault, felony hit and run, harassment, simple assault, and three domestic violence incidents. How many of these resulted in convictions does not appear in the record, although Mr. B. admits pleading guilty to a domestic violence charge and he was sentenced to nine months on the second-degree assault and hit and run counts. The latter two charges arose when Mr. B. was fired from his job and while driving away from the work site, rammed a fellow employee whom he blamed for his misfortune.

The court's finding of denial is supported by the testimony of Dr. Allen Traywick, who conducted a psychological evaluation. Dr. Traywick found the Minnesota Multiphasic Personality Inventory (MMPI) and other testing invalid because Mr. B. did not answer the questions honestly. He painted himself as "being free of any unusual difficulties, free of problems all of us have. It was a very defensive style to testing. The kind of person that would deny, minimize his own personal faults and difficulties." Dr. Traywick thought the magnitude of deception remarkable. "Most MMPIs are valid in legal cases. You will see guardedness, some minimization, attempting to present yourself as okay, but you can get some interpretive data from the clinical scales. You can not here because of the degree of invalidation." Without a valid test, there was no starting point to determine what course of services was indicated. Dr. Traywick considered Mr. B. "not open to psychological intervention."

In sum, the expedited termination proceedings of RCW 13.34.190(2) and (3) did not deprive Mr. B. of his due pro-

cess rights. The evidence supports the court's findings that he took no responsibility for his actions and had no insight into the causes or consequences of his conduct. These in turn support the court's conclusion beyond a reasonable doubt that his parental deficiencies would not be remedied in the near future.

Affirmed.

THOMPSON, C.J., and SWEENEY, J., concur.

Review denied at 128 Wn.2d 1023 (1996).