604

[Nos. 46503-1-I; 46504-0-I;    Division One.    April 2, 2001.]
46505-8-I; 46506-6-I;
46507-4-I; 46508-2-I.

*In the Matter of the Dependency of* A.A., ET AL.
NIHAD ALJIC, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, *Respondent*.
*In the Matter of the Dependency of* A.A., ET AL.
MARIZELA ALJIC, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, *Respondent*.

*Sharon J. Blackford* (of *Washington Appellate Project*), for appellant Nihad Aljic.

*Christopher Gibson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant Marizela Aljic.

*Christine O. Gregoire, Attorney General*, and *Janet Cattano, Assistant*, for respondent.

AGID, C.J. — Nihad Aljic and Marizela Aljic appeal the order terminating their parental rights to their three children, D.A., I.A., and A.A. We reject their argument that placement of the children with relatives is a "service" that the State must offer pursuant to RCW 13.34.180. We also conclude that the trial court's factual findings are supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence. Accordingly, we affirm.

## PROCEDURAL HISTORY[1]

Mr. and Mrs. Aljic are Roma, or Gypsy, and are Bosnian refugees. They immigrated to the United States from Bosnia in 1997. Their eldest child, D.A., was born in April 1996 while the Aljics were living in Bosnia. The middle child, I.A., was born in July 1997 while they were living in Arizona. The youngest child, A.A., was born in March 1999 while they were living in King County. The Department of Social and Health Services (DSHS) filed dependency petitions for D.A. and I.A. in March 1998, alleging domestic violence and alcohol abuse by Mr. Aljic. The court entered agreed orders of dependency in June 1998, in which both parents agreed that there were domestic violence, sexual abuse and alcohol problems in the home. After an October 1998 dependency review hearing, the court ordered D.A. and I.A. placed outside the home. The youngest child, A.A., was found dependent and dispositional orders as to both parents were entered in July 1999. A.A. was removed from his parents' custody very shortly after his birth and has never lived with the Aljics.

DSHS filed a termination petition for all three children in October 1999. A consolidated trial was held in March 2000. The following month, the court entered findings of fact, conclusions of law and an order terminating Mr. and Mrs. Aljic's parental rights to all three of the children.

## DISCUSSION

Relevant Statutes and Standard of Review

The elements necessary to terminate parental rights are set forth in RCW 13.34.180.[2] Mr. and Mrs. Aljic contest the trial court's findings and conclusions on the following three elements:

(d) That the services ordered under RCW 13.34.136 have

---

[1] The substantive facts will be discussed below where relevant.

[2] At the time of trial on the termination petitions, subdivisions of this statute were numbered somewhat differently. The substantive provisions have not changed.

been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . . [;]

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[3]

■ The trial court may enter an order terminating parental rights to a child if the elements set forth in RCW 13.34.180(1)(a)-(f) are established by clear, cogent, and convincing evidence and if it finds that termination is in the best interests of the child.[4] We will uphold the trial court's factual findings if they are supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence.[5] Deference to the trial court's findings is particularly important in termination proceedings.[6]

Mrs. Aljic's Appeal

In its dispositional order concerning A.A., the court ordered DSHS to investigate Mrs. Aljic's grandparents residing in Tennessee "as a possible placement resource and initiate an ICPC [Interstate Compact on the Placement of Children]." During the trial on the termination petitions, George Gonzalez of Child Protective Services in King County testified that he "submitted the paperwork for interstate contact for relatives in the Tennessee area."[7] At the time of trial, Gonzalez testified that he was no longer

---

[3] RCW 13.34.180(1)(d)-(f).

[4] RCW 13.34.190.

[5] *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

[6] *Id.* (citing *In re Dependency of K.R.*, 128 Wn.2d 129, 144, 904 P.2d 1132 (1995); *In re Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980)).

[7] Social worker Amy Carl also testified that George Gonzalez initiated the interstate compact process.

following through on the interstate compact although, to the best of his knowledge, the compact was still in place. Gonzalez did not write to Mrs. Aljic's relatives in Tennessee about placing the children with them under the interstate compact because, in his opinion, matters concerning placement and assessment of the home were to be handled by the Tennessee authorities, not those in Washington.

■ On appeal, Mrs. Aljic argues that because there was no home visit in Tennessee, the State failed to meet its burden to expressly and understandably offer or provide all the services ordered under RCW 13.34.136.[8] We reject Mrs. Aljic's argument because it is based on a faulty premise; namely, that placing the children in Tennessee is a "service" as that term is used in RCW 13.34.180.

Mrs. Aljic cites no authority to support her argument that placing children is a service RCW 13.34.180(1)(d) requires the State to provide, nor could we find any. The trial court did not make a written finding that placement constitutes a service. Rather, in its oral opinion, the court stated only that it would not be "an inappropriate argument" to characterize possible placement in Tennessee as a "service" as that term is used in RCW 13.34.180(1)(d). We conclude that such characterization would, in fact, be inappropriate.

The services to which RCW 13.34.180(1)(d) refers are those ordered under RCW 13.34.136. That section speaks of services offered to a parent "to enable them to resume custody."[9] The statute requires that the agency charged with supervising the children "provide all reasonable services that are available within the agency, or within the community, or those services which the department has existing contracts to purchase."[10] The services offered to the Aljics under this statute included domestic violence

---

[8] The trial court stated in its oral opinion, but not in its written findings, that a social worker visited the grandparents' home in Tennessee. Mrs. Aljic disputes this, and her grandfather testified that no social worker ever visited his home. Whether a home visit actually occurred is not relevant to our decision on appeal.

[9] RCW 13.34.136(1)(b)(i).

[10] RCW 13.34.136(1)(b)(iv).

counseling, parenting classes, drug and alcohol counseling, and random urinalyses. These are the kinds of services the statute contemplates. Placing the children with grandparents in Tennessee is more properly characterized as an "outcome" of the dependency proceedings, not as a service the State must offer while the dependency is going on. Indeed, the statute requires the agency to provide the court with a permanency plan for a child's care that must identify one of the following *outcomes* as a primary goal: "Return of the child to the home of the child's parent, guardian, or legal custodian; adoption; guardianship; permanent legal custody; long-term relative or foster care . . . ."[11]

Accordingly, even if, as Mrs. Aljic asserts, no social worker ever visited her grandparents' home in connection with the investigation into possible placement of the children there, that cannot be the basis for an argument that the State failed to provide all necessary services capable of correcting the parental deficiencies.

■ Mrs. Aljic also claims that the court erred by finding under RCW 13.34.180(1)(f) that continuation of the parent and child relationship clearly diminished the child's prospects for early integration into a stable and permanent home. But the trial court found that the grandfather was not a credible witness, and there was ample evidence that both parents failed to comply with court orders and to take advantage of the services offered to them. On that basis, the court concluded that investigating the possibility of placement in Tennessee would be futile. Given the deference due the court's credibility findings and the strong evidence of parental noncompliance, we will not disturb the court's decision about placement in Tennessee. Thus, we reject Mrs. Aljic's argument based on the assumption that placement in Tennessee is a viable option because the assumption is unsupportable.

Mr. Aljic's Appeal

■ ■ Mr. Aljic argues that the trial court erred in

[11] RCW 13.34.136(1)(a).

evaluating his behavior and parenting abilities because it was not fully informed about Roma history and culture. He does not, however, deny that he failed to comply with court orders or avail himself of the services he was offered to address his domestic violence and alcohol abuse problems. Rather, he argues that given the Roma culture, it is to his great credit that he made what effort he did to comply, an effort he admits would be very poor had it been made by someone raised in the American culture. We cannot accept the premise on which this argument is based.

Regardless of the culture from which the parents come, when a termination proceeding is initiated in a Washington court, the best interests of the children at issue are paramount. While the State must make every effort to provide services and reunite the family, the dominant consideration in a termination of parental rights proceeding is the moral, intellectual and material welfare of the child.[12] Where the parents' interests conflict with the children's rights to basic nurture, physical and mental health, and safety, the children's rights prevail.[13] Ever since these proceedings began, Mr. Aljic has failed to comply with the court's orders, including no-contact orders. He has failed to make more than a minimal effort to attend domestic violence and sexual and alcohol abuse counseling, even though these problems were the primary reasons the children were placed outside his home. Neither he nor Mrs. Aljic obeyed no-contact orders designed in part to protect the children from exposure to this atmosphere. No matter what country or culture a family comes from, returning children to such an environment would clearly not be in their best interests.

The trial court recognized that some cultures tolerate domestic violence to a greater degree than others. But this family is subject to the jurisdiction of Washington courts and the laws of Washington under which domestic violence is not tolerated. As the trial court aptly stated:

---

[12] *In re Dependency of J.W.*, 90 Wn. App. 417, 427, 953 P.2d 104, *review denied*, 136 Wn.2d 1021 (1998).

[13] RCW 13.34.020.

So the fact that . . . we have learned in the course of this case that there is yet another culture whose fundamental values come into conflict with the values in the United States does not mean that the children should suffer for it. These cultural conflicts should not be the burdens of the children.

The children's best interests are of paramount concern here, even if they conflict with Mr. Aljic's interest in living according to his Roma background. The trial court committed no error in its evaluation of Mr. Aljic's parenting abilities.

The order terminating Mr. and Mrs. Aljic's parental rights to D.A., I.A., and A.A. is affirmed.

The balance of this opinion has no precedential value and will not be published, but will be filed for public record pursuant to RCW 2.06.040.

GROSSE and KENNEDY, JJ., concur.