

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 69558-4-I |
| | ) | consolidated with |
| J.X.K., dob 5/9/05, | ) | No. 69559-2-I |
| M.C.S., dob 6/15/11, | ) | |
| | ) | |
| Minor Children. | ) | |
| | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF SOCIAL AND HEALTH SERVICES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHANA KALBERER-BOBO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 22, 2013 |
| | ) | |

VERELLEN, J. — Shana Kalberer-Bobo appeals the termination of her parental

rights to her son J.K., born May 9, 2005, and her daughter M.S., born June 15, 2011.

Kalberer-Bobo asserts the trial court erred in determining that (1) there was little

likelihood that conditions will be remedied so the children could be returned to her in the

near future; (2) continuation of her parental rights diminishes the children's prospects for

integration into a permanent home; and (3) termination of her parental rights is in the

children's best interest. Because the evidence amply supports the trial court's findings

of fact and those findings support the court's conclusions of law, we affirm.

## FACTS

Kalberer-Bobo experimented with drugs starting at age 14, later used cocaine daily, and became addicted to methamphetamine. In 2001, she was arrested for possession of drugs. In 2004, she was convicted of two controlled substance violations and incarcerated for 60 days.

In 2005, Kalberer-Bobo's son J.K. tested positive for methamphetamine at birth. Soon thereafter, the superior court granted a dependency petition filed by the Department of Social and Health Services (DSHS). J.K. lived with Kalberer-Bobo's mother for approximately five months. Kalberer-Bobo followed through with recommended services, including inpatient substance abuse treatment, and demonstrated continuing sobriety. The dependency was dismissed in June 2008.

In 2010, Kalberer-Bobo was arrested and charged with possession with intent to deliver methamphetamine. J.K. was removed from her care and placed with Kalberer-Bobo's mother, where he remains. Dependency was established for J.K. for the second time in March 2011 based on findings that Kalberer-Bobo provided inadequate care, had a criminal history with multiple arrests, had relapsed on methamphetamine, and was selling drugs. DSHS had earlier received reports that Kalberer-Bobo was using amphetamines, had repeatedly failed to pick up J.K. from the school bus stop, and had not provided J.K.'s school with medical equipment for J.K.'s severe asthma. The dispositional order called for J.K. to remain with his maternal grandparents and for Kalberer-Bobo to comply with urinalysis testing, have a drug/alcohol evaluation, and follow treatment recommendations.

On March 28, 2011, Kalberer-Bobo participated in a drug/alcohol evaluation. The evaluator recommended that she complete intensive outpatient treatment and urinalysis testing. Despite the recommendation, Kalberer-Bobo did not enter treatment.

Kalberer-Bobo's daughter M.S. was born in June 2011 with amphetamines in her system. Kalberer-Bobo admitted using drugs "off and on" throughout her pregnancy. Dependency was established as to M.S. in August 2011.[1] Kalberer-Bobo agreed to place M.S. with the paternal aunt. M.S. has never been in Kalberer-Bobo's care.

On July 17, 2011, Kalberer-Bobo was arrested for committing two drug offenses: possession with intent to manufacture or deliver heroin and possession of methamphetamine. Kalberer-Bobo was admitted to family treatment court, but was discharged for forging attendance slips for Alcoholics Anonymous/Narcotics Anonymous meetings. Kalberer-Bobo testified that she was also kicked out because the Department of Corrections found drugs in her room.

An agreed order of dependency for M.S. was entered in August 2011 based on Kalberer-Bobo testing positive for amphetamines while pregnant, participating in minimal prenatal care, and failing to engage in substance abuse treatment. Kalberer-Bobo was ordered to engage in intensive outpatient treatment, urinalysis testing, and mental health counseling. The court later changed the order to require inpatient substance abuse treatment. Kalberer-Bobo did not engage in these services before she pleaded guilty to her drug charges and was sentenced to 40 months in prison.

---

[1] Report of Proceedings (RP) (Oct. 9, 2012) at 42.

In February 2012, the trial court found that Kalberer-Bobo had not participated in treatment or urinalysis prior to incarceration, and had not engaged in services while incarcerated. The court ordered a permanent plan of adoption for both children.

DSHS filed the termination petition for both children on April 18, 2012. Following trial, the trial court entered orders terminating Kalberer-Bobo's parental rights as to both children on October 25, 2012.[2]

Kalberer-Bobo appeals.

## DISCUSSION

### Standard of Review

An appellate court reviews a trial court's termination order to determine whether the findings of fact are supported by substantial evidence in the record and whether the findings support the conclusions of law.[3] Unchallenged findings of fact are treated as verities on appeal.[4]

To prevail in a petition to terminate parental rights, the State must prove:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

---

[2] The children's fathers' parental rights were previously terminated.

[3] In re Dependency of C.B., 79 Wn. App. 686, 692, 904 P.2d 1171 (1995).

[4] Fuller v. Employ't Sec. Dep't of State of Wash., 52 Wn. App. 603, 605, 762 P.2d 367 (1988) (review is limited to determining whether the findings support the conclusions of law).

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .

. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[5]

Each of the above elements must be proven by clear, cogent, and convincing evidence.[6] The State must also demonstrate that termination of parental rights is in the best interests of the child.[7]

Here, it is undisputed that the elements of RCW 13.34.180(1)(a) through (d) are met. Kalberer-Bobo contends the State failed to prove RCW 13.34.180(1)(e) and (f), and argues that termination is not in the best interests of the children.

*Little Likelihood Conditions Can Be Remedied*

In determining whether there is little likelihood conditions will be changed such that the child can be returned to the parent in the near future, the court may examine the entire parenting history.[8]

---

[5] RCW 13.34.180(1).

[6] RCW 13.34.190(1)(a)(i); In re Welfare of S.V.B., 75 Wn. App. 762, 768, 880 P.2d 80 (1994); In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991). The clear, cogent, and convincing evidence standard is satisfied when a court determines that the ultimate fact at issue is shown to be "highly probable." In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973); In re Dependency of P.A.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990).

[7] RCW 13.34.190(1)(b).

Kalberer-Bobo contends she made substantial progress by remaining sober and complying with regulations while in prison. She also argues that she may qualify for early release from prison through the Family Offender Sentencing alternative (FOSA). In this regard, she asserts the facts of her case are analogous to those in In re Welfare of C.B.[9] There, DSHS contended the mother needed to engage in services, continue her sobriety, and maintain a clean and safe home, but failed to prove that these requirements could not be accomplished within one year.[10] The appellate court reversed the termination order, determining that DSHS failed to prove there was little likelihood her conditions could not be remedied in the near future.[11]

But the record here is substantially different than that in C.B., where the court found the parent's "drug use was [not] so extensive as to make it unlikely that she could not remedy it in the near future," "the State admitted that she was doing well in her recovery," and the trial court found that the parent "would likely improve."[12] None of these factors are present here. Kalberer-Bobo, unlike the parent in C.B., admitted at trial that she did not complete the services required in the dependency action. She failed to complete chemical dependency treatment or individual mental health counseling. Kalberer-Bobo's drug addiction has not been successfully treated since J.K. was removed from her care in 2010. Cassie Short, the court appointed special advocate (CASA) for the children, testified she did not believe Kalberer-Bobo was

---

[8] In re Welfare of Ross, 45 Wn.2d 654, 657, 277 P.2d 335 (1954).

[9] 134 Wn. App. 942, 143 P.3d 846 (2006).

[10] C.B., 134 Wn. App. at 956-57.

[11] Id. at 959-60.

[12] Id. at 958-59.

capable of adequately caring for J.K. and M.S. in the near future because she failed to comply with services despite numerous referrals, and had not made any progress. The trial court was not required to believe Kalberer-Bobo's stated intention to pursue needed services in the future, and the reviewing court will not weigh the evidence or credibility of witnesses.[13]

Kalberer-Bobo argues that her "limited ability to obtain needed services during her incarceration should not justify" the finding that there is little likelihood she could be reunited with her children in the near future.[14] But there was ample evidence that Kalberer-Bobo did not improve even when all services were available to her. She conceded as much at trial by admitting that all necessary services, reasonably available and capable of remedying her parenting deficiencies, were expressly and understandably offered or provided to her.

Kalberer-Bobo argues, as she did at trial, that she was a good candidate for early release through FOSA, and would be eligible for inpatient chemical dependency treatment, and would work toward having her children returned to her care. But Kalberer-Bobo's ability to participate in FOSA is unknown and was the subject of competing testimony at trial. DSHS social worker Jesse Choinski testified that Kalberer-Bobo was unlikely to qualify for FOSA, in part because of the long separation from J.K., the fact that M.S. was never in her care, and the fact that the children's caregivers were unlikely to allow her to parent the children again. Because there was conflicting evidence, the trial court was not required to accept Kalberer-Bobo's optimism that she

---

[13] Sego, 82 Wn.2d at 740.

[14] Appellant's Br. at 11.

would qualify, much less that she would succeed to the point that she could have the children returned to her care.

The evidence overwhelmingly supports the trial court's finding that there is little likelihood that Kalberer-Bobo will remedy her parental deficiencies in the near future.[15] Kalberer-Bobo fails to demonstrate any error warranting appellate relief.

*Integration Into Stable and Permanent Home*

When determining whether substantial evidence supports RCW 13.34.180(1)(f), the main focus is the parent-child relationship and whether it impedes the child's prospects for integration.[16]

The record supports the trial court's finding that the State proved this element. Social worker Choinski and CASA Short stated that J.K. and M.S. are adoptable and that both have prospects for adoption. The record demonstrates that each of the children remained in the same placement since the dependency actions began. J.K. remained in placement with his maternal grandmother since 2010, and M.S. remained with her paternal aunt since her birth. Choinski testified that M.S. had no parent-child bond with her mother. Choinski testified that J.K. was "distressed by the possibility of going back or leaving his grandma,"[17] that his visits with Kalberer-Bobo were "pretty inconsistent," interrupted his routine and schedule, and "there was a lot of tension."[18]

---

[15] "A determination of what constitutes the near future depends on the age of the child." In re Dependency of T.L.G., 126 Wn. App. 181, 204, 108 P.3d 156 (2005).

[16] C.B., 134 Wn. App. at 345.

[17] RP (Oct. 9, 2012) at 106.

[18] Id. at 111.

There was evidence that the placements are prospective adoptive homes, and that these homes cannot become permanent if the mother's parental rights remained intact. She further stated that there was tension between M.C.'s caregiver and Kalberer-Bobo because the caregiver suspected Kalberer-Bobo was intoxicated during visits. The situation became so stressful for the caregiver that visits at her home were discontinued. Short testified that there was conflict between Kalberer-Bobo and her mother, and that Kalberer-Bobo's mother felt the visits were too disruptive for J.K. Short also testified that visits with both children were disrupted by Kalberer-Bobo's "inconsistent, erratic behavior, and sometimes aggressive and volatile behavior."[19] Given this evidence, the trial court did not court err by finding this factor proven.

### Present Unfitness

Kalberer-Bobo contends that because she sought out voluntary treatment, education, and leadership roles while in prison, she has demonstrated present fitness to parent. She argues that the trial court impermissibly relied only on her past fitness when it found her unfit to parent.

However, the record provides ample support for the trial court's finding that Kalberer-Bobo was unfit to parent the children due to her serious methamphetamine addiction and criminal behavior. The court may consider the long-standing involvement of DSHS and the court, as well as past history of the parent's behavior and deficiencies.[20] Between the time J.K. was removed in December 2010 and Kalberer-Bobo's incarceration in December 2011, she failed to complete court-ordered chemical

---

[19] Id. at 225.

[20] In re Dependency of J.C., 130 Wn.2d 418, 427-28, 924 P.2d 21 (1996).

dependency treatment, urinalysis testing, mental health services, and had several relapses into drug use.

The trial court did not err by finding the mother presently unable to adequately care for the children.

## Best Interests of the Children

Kalberer-Bobo contends the juvenile court erred in finding it was in the children's best interests to terminate her parental rights. We disagree.

The dominant consideration in a termination of parental rights proceeding is the moral, intellectual and material welfare of the child.[21] Appellate courts are constrained to place very strong reliance on a trial court's determination of what course of action will be in the best interests of the child.[22]

There was substantial evidence in the record from which the trial court could determine that termination was in J.K.'s best interests. Although Kalberer-Bobo describes a strong bond, the evidence demonstrates that the only time she was consistent in attending visitation with J.K. was during a few months of inpatient treatment when the children were transported to her treatment facility. The last visit she had with J.K. was in September or October 2011.

There was substantial evidence that J.K.'s physical and behavioral health improved after he was no longer in his mother's care. Kalberer-Bobo testified that J.K. had severe eczema and asthma, and had been repeatedly hospitalized for his asthma while in her care. Choinski testified that J.K.'s asthma and eczema had to be monitored

---

[21] In re Dependency of A.A., 105 Wn. App. 604, 610, 20 P.3d 492 (2001).

[22] In re Interest of Pawling, 101 Wn.2d 392, 401, 679 P.2d 916 (1984).

and medicated. Short testified that J.K.'s eczema and asthma improved after he was placed in his grandmother's care. Choinski testified that J.K. also had developed behavioral issues while in his mother's care, including anger and aggression, but these issues diminished since J.K. was removed from Kalberer-Bobo's care. Choinski opined that J.K. needs permanency now and needs to know who will meet his needs on a regular basis.

According to Choinski, M.S. does not have any parent-child bond with Kalberer-Bobo and does not know who she is. M.S. has never been in her mother's care and does not see her mother as her primary caregiver or as the person who fulfills her needs. Although Kalberer-Bobo initially participated in supervised visitation with M.S. under the supervision of the paternal aunt, the aunt was concerned that the mother was attending visits while under the influence. M.S. last visited with her mother when she was four months old. At the time of trial, M.S. was 16 months old.

The CASA testified that M.S. and J.K. need "stability and permanence and to live in a forever family now" and recommended termination of Kalberer-Bobo's parental rights.[23] She stated it would not be safe to return the children to Kalberer-Bobo in the near future.

Because the record amply supports the trial court's finding as to the children's best interests, Kalberer-Bobo fails to demonstrate that the finding was erroneous.

---

[23] RP (Oct. 10, 2012) at 226-27.

## CONCLUSION

Substantial evidence supports the trial court's findings of fact. Those findings support the conclusions of law. The elements of RCW 13.34.180(1) and RCW 13.34.190 have been met. We affirm the order terminating Kalberer-Bobo's parental rights as to J.K. and M.S.

Verellen, J.

WE CONCUR:

Leach, C.J.

Cox, J.