

FILED
COURT OF APPEALS D
STATE OF WASHINGTON

2015 NOV -9 AM 8: 33

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br><br>M.M.D.-D.,<br>DOB: 4/20/11,<br><br>      Minor Child.<br><br>SHAMIRA DOBSON,<br><br>      Appellant,<br><br>  v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>      Respondent. | DIVISION ONE<br><br>No. 73254-4-I<br><br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: November 9, 2015 |

DWYER, J. – RCW 13.34.200(3) requires the trial court to include a statement addressing sibling relationships on an order terminating parental rights. Shamira Dobson contends that the trial court's failure to comply with this requirement constituted reversible error. She also contends that RCW 13.34.190, which requires a determination that termination is in the best interests of the child, is unconstitutionally vague. Because Dobson's arguments do not establish a basis for appellate relief, we affirm the order terminating her parental rights to her daughter M.M.

I

The relevant facts are undisputed. M.M., born on April 20, 2011, is the daughter of Shamira Dobson. At the time of M.M.'s birth, Dobson had a prior

history of parenting issues involving inadequate parenting skills, mental health, and lack of appropriate housing. Dobson's parental rights to MD, M.M.'s older sister, were terminated in September 2010.

The Department of Social and Health Services (Department) removed M.M. from Dobson's care over concerns about Dobson's unstable housing arrangements and possible drug use. Dobson entered into an agreed dependency order as to M.M. on August 31, 2012. The dispositional order required Dobson to complete a drug and alcohol evaluation, a mental health intake and a parenting assessment and to comply with any treatment recommendations. Dobson also agreed to establish paternity and complete random urinalysis testing and parenting classes. The Department placed M.M. with her paternal grandparents.

Dobson has had no contact with M.M. since November 2012. In February 2013, Dobson moved to San Diego, where she has remained. While in California, Dobson gave birth to two sons: C.H., born May 2, 2013, and J.D., born October 8, 2014. After Dobson acknowledged to California child protective service workers that she had been using methamphetamines, a California court found both children to be dependent.

Through most of 2013 and into 2014, Rashida Ballard, Dobson's Washington social worker, sent letters and emails to Dobson about the dependency proceeding involving M.M. Ballard repeatedly reminded Dobson about her Washington court-ordered services and advised her that she could

participate in those services in California. Ballard was concerned by Dobson's lack of response.

On August 22, 2014, the Department petitioned for termination of Dobson's parental rights to M.M. During a three-day trial in January 2015, the trial court heard from Dobson's Washington and California social workers, M.M.'s court-appointed special advocate, and a drug and alcohol treatment provider. Dobson testified by telephone. On March 2, 2015, the trial court entered findings of fact, conclusions of law, and an order terminating Dobson's parental rights.

The court found that the Department had offered or provided Dobson all reasonably available, necessary services, but that there had been no substantial improvement in her parenting skills since the dependency began. The court recognized that Dobson was currently in treatment, but found that her recovery was tenuous given her acknowledged relapse and use of methamphetamines.

The court further found that, given her addiction, admitted current unfitness to parent M.M., and chronic homelessness, Dobson's recovery would likely require at least a year, a period not within the foreseeable future for four-year-old M.M. The court noted that Dobson had made no efforts to contact M.M. since November 2012 and that her contact with the Department had been only sporadic.

The court concluded that the State had proved the six termination factors in RCW 13.34.180(1)(a)-(f) by clear, cogent, and convincing evidence. The court

also found the evidence established that termination was in M.M.'s best interest. RCW 13.34.190.

Dobson appeals.

## II

Dobson has not assigned error to any of the trial court's findings of fact. They are therefore verities on appeal. In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012). Nor does she challenge the sufficiency of the evidence to support the six statutory termination factors in RCW 13.34.180(1)[1] or the trial court's determination that termination is in M.M.'s best interest under RCW 13.34.190. Rather, she contends that the termination order must be reversed because the trial court failed to include a statement addressing M.M.'s sibling relationships in accordance with RCW 13.34.200(3).

RCW 13.34.200(3) provides that "[a]n order terminating the parent-child relationship shall include a statement addressing the status of the child's sibling relationships and the nature and extent of sibling placement, contact, or visits." The State does not dispute that the provision is mandatory and reflects the Legislature's intention to encourage consideration of sibling relationships when appropriate under the specific circumstances of each case:

---

[1] These are: (1) the child is dependent, (2) the court has entered a dispositional order, (3) the child has been removed from the parent's custody for at least six months pursuant to a dependency finding, (4) all necessary services which could correct the parental deficiencies have been offered, (5) there is little likelihood that the parental condition can be remedied in the near future, and (6) continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. RCW 13.34.180(1)(a)-(f).

"It is the intent of the legislature to recognize the importance of emotional ties formed by siblings with each other, especially in those circumstances which warrant court intervention into family relationships. It is the intent of the legislature to encourage the courts and public agencies which deal with families to acknowledge and give thoughtful consideration to the quality and nature of sibling relationships when intervening in family relationships. It is not the intent of the legislature to create legal obligations or responsibilities between siblings and other family members whether by blood or marriage, step families, foster families, or adopted families that do not already exist. Neither is it the intent of the legislature to mandate sibling placement, contact, or visitation if there is reasonable cause to believe that the health, safety, or welfare of a child or siblings would be jeopardized. Finally, it is not the intent of the legislature to manufacture or anticipate family relationships which do not exist at the time of the court intervention, or to disrupt already existing positive family relationships."

In re Welfare of A.G., 155 Wn. App. 578, 596-97, 229 P.3d 935 (2010) (quoting Laws of 2003, ch. 227, § 1), review granted and reversed on other grounds following remand, 160 Wn. App. 841, 248 P.3d 611 (2011).

The State included a separate section on RCW 13.34.200(3) in its trial memorandum. But the parties apparently raised no arguments related to the provision, and the trial court did not refer to it during its oral decision or include a specific statement referencing the statute in the termination order.

The State contends that the trial court's findings are sufficient either to comply with RCW 13.34.200(3) or to constitute substantial compliance. But the findings recite little more than the fact that the parental rights of M.M.'s older half-sister were terminated in 2010 and that her two younger half-brothers are involved in dependency proceedings in California. The findings disclose no meaningful information about the nature of M.M.'s relationship, if any, with her

siblings. Given the unambiguous statutory directive, a mere cursory reference to the existence of siblings satisfies neither the letter nor the spirit of RCW 13.34.200(3).[2]

Nonetheless, Dobson has not cited any authority suggesting that a failure to comply with RCW 13.34.200(3) requires automatic reversal of the termination order. Cf. A.G., 155 Wn. App. at 596 (affirming termination despite failure to comply with RCW 13.34.200(3)). The trial court herein concluded that the State had established the six termination factors by clear, cogent, and convincing evidence and that termination was in M.M.'s best interests. As indicated, Dobson has not challenged the sufficiency of the evidence to support those conclusions. Nor has she suggested that the failure to comply with RCW 13.34.200(3) adversely affected the trial court's assessment of the evidence or its decision to terminate her parental rights.

Parents have a fundamental liberty and privacy interest in the care, custody, and management of their children. In re Dependency of J.H., 117 Wn.2d 460, 473, 815 P.2d 1380 (1991). But this fundamental parental right must be balanced with the State's compelling interest in providing maximum protection for dependent children. In re Welfare of S.E., 63 Wn. App. 244, 250, 820 P.2d 47

---

[2] The State contends that Dobson failed to raise the issue below and may therefore not raise it for the first time on appeal. But the State does not cite any relevant supporting authority or indicate how Dobson should have raised the issue below. We therefore decline to consider the State's contentions. See Habitat Watch v. Skagit County, 155 Wn.2d 397, 416, 120 P.3d 56 (2005) (appellate court will not review issues supported by inadequate legal arguments).

(1991). When the rights of parents and the welfare of their children conflict, the legislature has declared that the "rights and safety of the child should prevail." RCW 13.34.020. The child's rights include "the right to a safe, stable, and permanent home" and a "speedy resolution" of dependency and termination proceedings. RCW 13.34.020

To reverse the termination order for what we presume was the trial court's inadvertent omission, without any allegation or demonstration of prejudice, would undermine the strong policy favoring permanence and finality for children following termination proceedings. Under the circumstances here, Dobson is not entitled to the requested relief. See Thomas v. French, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) (error without prejudice is not ground for reversal).

III

Dobson contends that RCW 13.34.190, which requires the trial court to find that termination is in the best interests of the child, is unconstitutionally vague. She argues that the statute violates due process because it fails to provide even minimal guidelines to reduce the risk of arbitrary application.

An appellate court reviews the constitutionality of a statute de novo. In re Dependency of K.R., 128 Wn.2d 129, 142, 904 P.2d 1132 (1995). We presume that the statute is constitutional, and the party challenging that presumption bears the burden of proving beyond a reasonable doubt that the statute is unconstitutional. In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015).

"In any vagueness challenge, the first step is to determine if the statute in question is to be examined as applied to the particular case or to be reviewed on its face." City of Spokane v. Douglass, 115 Wn.2d 171, 181-82, 795 P.2d 693 (1990). A vagueness challenge to a statute that does not involve First Amendment rights must be evaluated "in light of the particular facts of each case." Douglass, 115 Wn.2d at 182.

Washington courts have determined that termination proceedings do not involve First Amendment rights. See In re Welfare of H.S., 94 Wn. App. 511, 524, 973 P.2d 474 (1999) (vagueness challenge to RCW 13.34.180(5)); In re Dependency of C.B., 79 Wn. App. 686, 689, 904 P.2d 1171 (1995) (challenge to former RCW 13.34.190(2)). Thus, Dobson's facial challenge must fail. Because she does not allege that the best interests standard is vague as applied to the facts of her case, her argument must fail in its entirety.

Affirmed.

We concur:

_____

_____
Cox, J.

_____